**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| BRIAN ZIMMER, Individually and on Behalf of All Others Similarly Situated,<br><br>         Plaintiff,<br><br>   v.<br><br>METALDYNE PERFORMANCE GROUP INC., GEORGE THANOPOULOS, KEVIN PENN, LOREN EASTON, MICHAEL FISCH, NICK BHAMBRI, WILLIAM JACKSON, JEFFREY STAFEIL, and JOHN PEARSON SMITH,<br><br>         Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Brian Zimmer ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Metaldyne Performance Group Inc. ("MPG" or the "Company") against MPG and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with MPG, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger between MPG and American Axle & Manufacturing Holdings, Inc. ("AAM").

2. On November 3, 2016, MPG announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Alpha SPV I, Inc., a wholly

- 2 -

owned subsidiary of AAM, will merge with and into MPG, with MPG surviving the merger as a wholly owned subsidiary of AAM (the "Proposed Merger").

3. Pursuant to the terms of the Merger Agreement, MPG shareholders will receive $13.50 in cash and 0.5 of a share of AAM common stock in exchange for each MPG common share they own (the "Merger Consideration"). The implied value of the Merger Consideration based upon AAM's closing price the day before the Proposed Merger was announced is approximately $21.80 per MPG share. The Proposed Merger is valued at approximately $1.6 billion.

4. The Merger Consideration appears inadequate in light of MPG's recent financial performance and growth prospects. Indeed, between February 11, 2016 and November 2, 2016 (the date preceding the announcement of the Proposed Merger), the Company's stock price increased by approximately 41%.

5. On March 6, 2017, in order to convince MPG's shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

6. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the background to the Proposed Merger; (ii) financial projections for the Company and AAM; and (iii) the valuation analyses performed by the Company's financial advisor, BofA Merrill Lynch, in support of its fairness opinion.

7. The special meeting of MPG shareholders to vote on the Proposed Merger is scheduled for April 5, 2017. It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder

vote, so that they can properly exercise their corporate suffrage rights.

8. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 and Regulation G, 17 C.F.R. § 244.100. Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to MPG's shareholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

10. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

11. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) MPG maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv)

Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

12. Plaintiff is, and at all relevant times has been, a shareholder of MPG.

13. Defendant MPG is a Delaware corporation and maintains its principal executive offices in Southfield, Michigan. The Company develops formed metal products for powertrain and safety critical platforms used in light, commercial, and industrial vehicles.

14. Individual Defendant George Thanopoulos is, and has been at all relevant times, MPG's Chief Executive Officer and a Company director.

15. Individual Defendant Kevin Penn is, and has been at all relevant times, the Chairman of the MPG Board.

16. Individual Defendant Loren Easton is, and has been at all relevant times, an MPG director.

17. Individual Defendant Michael Fisch is, and has been at all relevant times, an MPG director.

18. Individual Defendant Nick Bhambri is, and has been at all relevant times, an MPG director.

19. Individual Defendant William "Bill" Jackson is, and has been at all relevant times, an MPG director.

20. Individual Defendant Jeffrey Stafeil is, and has been at all relevant times, an MPG director.

21. Individual Defendant John Pearson Smith is, and has been at all relevant times, an MPG director.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of MPG (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23. This action is properly maintainable as a class action because:

a. The Class is so numerous that joinder of all members is impracticable. As of March 2, 2017, there were approximately 67.92 million shares of MPG common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public shareholders of MPG will be ascertained through discovery;

b. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

    i) whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

    ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

    iii) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I. MPG's Recent Financial Performance**

24. MPG was founded in 2010 and is headquartered in Southfield, Michigan. The Company produces and sells components for use in powertrain and safety-critical platforms. It operates through three segments: HHI, Metaldyne, and Grede. The HHI segment manufactures highly-engineered metal-based products, including transmission components, drive line components, wheel hubs, axle ring and pinion gears, sprockets, balance shaft gears, timing drive systems, VVT components, transfer case components, and wheel bearings. The Metaldyne segment manufactures highly-engineered metal-based powertrain products, such as connecting

rods, VVT components, balance shaft systems, crankshaft dampers, differential gears, pinions and assemblies, valve bodies, hollow and solid shafts, clutch modules, and assembled end covers.  The Grede segment manufactures cast, machined, and assembled components comprising turbocharger housings, differential carriers and cases, scrolls and covers, brake calipers and housings, knuckles, control arms, and axle components.  The Company's powertrain platform comprises engine, transmission, and driveline applications, and its safety-critical platform includes chassis, suspension, steering, and brake component applications.  MPG serves vehicle original equipment manufacturers and tier I suppliers in the light, commercial, and industrial vehicle and equipment markets.

25.     The Merger Consideration MPG shareholders stand to receive if the Proposed Merger is consummated appears inadequate in light of the Company's recent financial performance and standalone growth prospects.

26.     Indeed, between February 11, 2016 and November 2, 2016 (the date preceding the announcement of the Proposed Merger), the Company's stock price increased by approximately 41%., as reflected in the graph below:



27. The significant increase in MPG's stock price in recent months is a result of the Company's strong financial performance over the past several quarters.

28. On February 25, 2016, MPG announced the following impressive financial results for its full year 2015: Net sales increased 12.2% to $3,047.3 million, compared to $2,717.0 million for the full year in 2014; gross profit increased 22.0% to $516.1 million for 2015, compared to $422.9 million in 2014; and adjusted EBITDA was $538.2 million or 17.7% of net sales, an increase of nearly $60 million from 2014.

29. On May 5, 2016, MPG announced the following impressive financial results for its first quarter of 2016: Gross profit was $136.5 million for the quarter, an increase of 6% from Q1 2015; adjusted EBITDA of $137.7 million, compared to $132.6 million in Q1 2015, representing a year-over-year increase of 4%; and adjusted Free Cash Flow, defined as Adjusted EBITDA less capital expenditures on an accrual basis, was $92.7 million, an increase of $6.2 million from Q1 2015.

30. On August 4, 2016, MPG increased its free cash flow guidance from $125 million to $145 million.

31. Most recently, on February 24, 2017, MPG announced another quarter of positive financial results, including strong cash flow and EBITDA margins. Commenting on the Company's financial results, Individual Defendant Thanopoulos stated: "We are very pleased with our 2016 results which reflect our ability to generate significant cash flow and strong margins. Our cash flow allowed us to reinvest in the business in addition to increasing shareholder value through debt reduction, share repurchases and increased dividends in 2016. These results also reflect our ability to drive value for our customers, who have rewarded us with significant new business awards, doubling our net new business backlog."

32. In sum, MPG is poised for a period of significant financial growth, and the Merger Consideration appear to inadequately compensate MPG shareholders for their shares while diluting their ownership stake of the combined company. It is imperative that Defendants disclose the material information they have omitted form the Proxy (discussed in detail below), so that MPG shareholders can properly assess the fairness of the Merger Consideration for themselves and determine whether they should vote for or against the Proposed Merger.

**II.     The Merger Agreement's Deal Protection Provisions Deter Superior Offers**

33. The Individual Defendants have also agreed to certain deal protection provisions in the Merger Agreement that operate conjunctively to deter other suitors from submitting a superior offer for MPG.

34. First, the Merger Agreement contains a no solicitation provision that prohibits the Company or the Individual Defendants from taking any affirmative action to obtain a better deal for MPG shareholders. The Merger Agreement generally states that the Company and the Individual Defendants shall not: (i) initiate, solicit, propose or knowingly encourage or knowingly facilitate any inquiry or the making of any proposal or offer that constitutes, or would reasonably be expected to lead to, an acquisition proposal; (ii) engage in, continue or otherwise participate in any discussions or negotiations relating to any acquisition proposal; or (iii) provide any non-public information to any person in connection with any acquisition proposal.

35. Additionally, the Merger Agreement grants AAM recurring and unlimited matching rights, which provides it with: (i) unfettered access to confidential, non-public information about competing proposals from third parties which it can use to prepare a matching bid; and (ii) several days to negotiate with MPG, amend the terms of the Merger Agreement and make a counter-offer in the event a superior offer is received.

36. The non-solicitation and matching rights provisions essentially ensure that a superior bidder will not emerge, as any potential suitor will undoubtedly be deterred from expending the time, cost, and effort of making a superior proposal while knowing that AAM can easily foreclose a competing bid. As a result, these provisions unreasonably favor AAM, to the detriment of MPG's public shareholders.

37. Lastly, the Merger Agreement provides that MPG must pay AAM a termination fee of $50,897,000 in the event the Company elects to terminate the Merger Agreement to pursue a superior proposal. The termination fee provision further ensures that no competing offer will emerge, as any competing bidder would have to pay a naked premium for the right to provide MPG shareholders with a superior offer.

38. Ultimately, these preclusive deal protection provisions restrain MPG's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.

39. Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that MPG's shareholders receive all material information necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Merger.

### III.   The Materially Incomplete and Misleading Proxy

40. On March 6, 2017, MPG filed the Proxy with the SEC in connection with the Proposed Merger. The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's

shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

41. First, the Proxy fails to provide material information concerning the Company's and AAM's financial projections. Specifically, the Proxy at page 99 provides projections for the non-GAAP metric Adjusted EBITDA, but fails to provide line item projections for the metrics used to calculate Adjusted EBITDA or otherwise reconcile this non-GAAP projection to GAAP.

42. When a company discloses information in a Proxy that includes non-GAAP financial measures, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100.

43. Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders. The SEC Chairwoman, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as MPG has included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.

44. In recent months, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heighted its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts. MPG routinely reconciles its Adjusted EBITDA figures to income before tax (the most directly comparable GAAP measure) in its quarterly financial releases,[3] and it could undoubtedly do the same for the Adjusted EBITDA projections included in the Proxy.

45. In order to make the non-GAAP projections on page 99 of the Proxy not misleading, Defendants must disclose a reconciliation table of Adjusted EBITDA to the most directly comparable GAAP measure, and/or the line item projections for the various metrics that were used to calculate Adjusted EBITDA set forth in footnote 2 on page 99 of the Proxy. Indeed, Defendants concede that "Non-GAAP financial measures are not and should not be considered a substitute for any GAAP measure," Proxy 99, yet, by failing to provide a

---

[1] *See, e.g*., Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[2] *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

[3] *E.g*., MPG Reports 2016 Results; Strong Cash Flow, Continued Strong EBITDA Margins (Feb. 24, 2017), http://s21.q4cdn.com/173708164/files/doc_news/2017/Press-Release-Final.pdf.

reconciliation table or disclose the projections for the line items used to calculate Adjusted EBITDA, Defendants are essentially asking MPG's shareholders to consider Adjusted EBITDA as "a substitute" for a GAAP measure.

46.     The Proxy also fails to provide sufficient information for shareholders to assess the valuation analyses performed by BofA Merrill Lynch in support of its fairness opinion.

47.     With respect to BofA Merrill Lynch's *Selected Publicly Traded Companies Analysis* and *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the individual multiples for each transaction and company utilized.  As a result of these omissions, shareholders are unable to assess whether BofA Merrill Lynch applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied share price ranges.  The omission of such information renders the summaries of these valuation analyses and the implied share price ranges on pages 90-93 of the Proxy misleading.

48.     Further, the Proxy fails to disclose that BofA Merrill Lynch faced a significant conflict of interest as a result of its holdings in AAM.  According to *Bloomberg*, Bank of America Corporation (BofA Merrill Lynch's parent) holds 1,312,993 shares in AAM, which are worth approximately $24.5 million based upon AAM's current trading price.  Such information is undoubtedly material to MPG shareholders, as BofA Merrill Lynch's fairness opinion is being touted to them as one of the primary reasons they should support the Proposed Merger.  Proxy 75.  The omission of this information renders the vague statement on page 96 of the Proxy that BofA Merrill Lynch "may…make or hold long or short positions" in AAM misleading, because it fails to affirmatively state that BofA Merrill Lynch *does* in fact currently hold a significant position on AAM.

49. Lastly, with respect to the "*Background of the Merger*" section, the Proxy notes that MPG engaged in discussions with companies identified as "Company A" and "Company B" regarding a strategic transaction, but fails to state whether or not these companies entered into confidentiality agreements with MPG, and, if so, whether such agreements contained standstill or "don't-ask-don't-waive" provisions.  Company A made several offers to acquire MPG, and it therefore may have had access to confidential Company information and entered into a confidentiality agreement.  Indeed, the Proxy at page 129 confusingly states that MPG "will not…terminate, waive, amend or modify any provision of any existing standstill or confidentiality agreement…", but does not specifically identify any standstill or confidentiality agreements that MPG has entered into.  MPG shareholders would undoubtedly find such information material, as it relates directly to whether or not other interested bidders are now contractually prohibited from making them a superior offer.  The omission of this information renders the vague reference to the "existing standstill or confidentiality agreements" on page 129 of the Proxy incomplete and misleading.

50. In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

# COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

53.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

54.     SEC Regulation G has two requirements: (1) a general disclosure requirement; and (2) a reconciliation requirement. The general disclosure requirement prohibits "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading*." 17 C.F.R. § 244.100(b). The reconciliation requirement requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly

comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a). As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100.

55. The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

56. Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the background to the Proposed Merger; (ii) financial projections for the Company; and (iii) the valuation analyses performed by BofA Merrill Lynch.

57. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

58. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the

Proposed Merger; indeed, the Proxy states that BofA Merrill Lynch reviewed and discussed itsfinancial analyses with the Board, and further states that the Board considered both the financial analyses provided by BofA Merrill Lynch as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review BofA Merrill Lynch's analyses in connection with their receipt of the fairness opinion, question BofA Merrill Lynch as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

59. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

60. MPG is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

61. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

62. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63. The Individual Defendants acted as controlling persons of MPG within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of MPG, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

64. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65. In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

66. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

67. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

68. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

69. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a Class Action and

certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C. Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 22, 2017

**OF COUNSEL**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY 10118
Tel: (212) 971-1341
E-mail: jmonteverde@monteverdelaw.com

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Avenue, 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
Email: nfaruqi@faruqilaw.com
 jwilson@faruqilaw.com
*Attorneys for Plaintiff*

Respectfully submitted,

**ANTHONY L. DELUCA, PLC**

By: */s/ Anthony L. DeLuca*
Anthony L. DeLuca (P64874)
14950 East Jefferson Ave., Suite 170
Grosse Pointe Park, MI 48230
Tel: (313) 821-5905
Fax: (313) 821-5906
Anthony@aldplc.com

*Attorneys for Plaintiff*